UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| DEBORAH SUSAN ALEXANDER and | ) | |
|---|---|---|
| PAMELA WEEKS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-91 |
| | ) | |
| THE TERRY LAW FIRM, P.C. 401(K) | ) | |
| PROFIT SHARING PLAN and THE TERRY | ) | |
| LAW FIRM, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion to Dismiss [doc. 8], Defendants' Brief in Support of the Motion to Dismiss [doc. 9], and Plaintiffs' Response in Opposition [doc. 11]. For the reasons herein, the Court will grant in part and deny in part Defendants' Motion.

### I. BACKGROUND

Plaintiffs Deborah Susan Alexander and Pamela Weems ("Plaintiffs") allege that they were former employees of the Terry Law Firm, P.C. ("Terry Law Firm") and participants in The Terry Law Firm, P.C. 401(k) Profit Sharing Plan ("Plan"). [Compl., doc. 1, ¶¶ 8–11]. Plaintiffs claim that when their employment ended with the Terry Law Firm, they

requested that the Terry Law Firm, the Plan's administrator,[1] transfer the retirement benefits they earned under the Plan to their personal retirement accounts. [*Id.* ¶ 13]. The Plan provides that a participant is eligible to receive distribution of retirement benefits "in the Plan Year following the Plan Year in which you terminate employment," after "request[ing] a distribution on the appropriate forms." [The Plan, doc.1-4, at 13].

In attempting to request their vested retirement benefits, Plaintiffs allege that they submitted all the necessary paperwork to the Terry Law Firm but that it has not executed their request and refuses to do so. [Compl. ¶ 17]. Instead, the Terry Law Firm brought a civil suit against Plaintiffs in state court,[2] and filed a "Motion to Pay Monies into Court," in which it asks the state court to order that "monies owed" to Plaintiffs under the Plan "be paid into" the court's registry, [Mot. to Pay Monies, doc. 9-1, 1]:

> 1. This case has been stayed at the request of the Defendants in an effort to allow the Defendants to protect any and all information, which may be used to incriminate themselves in a criminal action.
>
> 2. [T]he Defendants have thus far been able to protect documents from discovery . . . that would, in fact, show whether the Defendants misappropriated clients and monies from the [Terry Law Firm] while the Defendants were employed by the [Terry Law Firm].
>
> . . . .
>
> 12. The [Terry Law Firm] would be entitled to a set off of any monies, which the Defendants obtained wrongfully or illegally and as a result since that amount cannot be determined at this time, the [Terry Law Firm] would ask the Court to hold these monies that could be used for a setoff in

---

[1] The Plan's administrators are specifically Denise T. Stapleton, Charles R. Terry, Jr., and Fred B. Terry. [The Plan, doc.1-4, at 2]. For brevity, the Court will refer to the Terry Law Firm as the Plan's administrator throughout this Memorandum Opinion.

[2] Based on the parties' filings with this Court, the exact nature of the state-court action is not entirely clear but appears to be an action for conversion or civil theft against Deborah Susan Alexander and Pamela Weems.

2

the Court's Registry until such time as the extent of the monies owed to the [Terry Law Firm] can be determined . . . .

[*id.* ¶¶ 1–2, 12].

As a result, Plaintiffs brought suit in this Court under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, alleging violations of 29 U.S.C. §§ 1132(a)(1)(B), (a)(3). [Compl. ¶ 4].[3] Plaintiffs also claim that the Terry Law Firm's efforts to deposit their vested retirement benefits into the state court's registry is a violation ERISA's prohibition against alienation under 29 U.S.C. § 1056.[4] [*Id.* ¶ 21]. Plaintiffs assert that because the Terry Law Firm refuses to disburse the funds, additional requests on their part "would be futile" and therefore "all avenues of administrative relief have been exhausted." [*Id.* ¶ 25]. In Plaintiffs' prayer for relief, Plaintiffs request several remedies, including an accounting, specific performance, prejudgment interest, restitution, preliminary and permanent injunctions, and attorney's fees and expenses. [*Id.* at 6–7]. The Terry Law Firm and the Plan ("Defendants") now request dismissal of the Complaint. [Defs.' Br. at 1–9].

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." In determining whether to dismiss a complaint under Federal Rule of

---

[3] Neither party disputes that ERISA applies to the Plan.
[4] Section 1056(d)(1)'s prohibition against alienation states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Defendants do not argue that the Plan does not qualify as a "pension plan."

3

Civil Procedure 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In addition, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

Defendants argue that the Court should dismiss Plaintiffs' claim for the recovery of benefits under § 1132(a)(1)(B) because they "already paid Plaintiffs their entire vested balances" under the Plan. [Defs.' Br. at 3]. As a result, Defendants propose that Plaintiffs' claim under § 1132(a)(B)(1) is moot. [*Id.* at 4]. As for the claim under § 1132(a)(3), Defendants maintain that Plaintiffs fail to plead facts that can support a breach of fiduciary duty because Plaintiffs do not allege that Defendants have "misappropriated or misused" assets under the Plan. [*Id.* at 5]. Defendants also claim that because Plaintiffs have already received an adequate remedy under § 1132(a)(B)(1)—namely the receipt of their retirement benefits—they cannot invoke § 1132(a)(3) "to redress the exact same injury (i.e., nonpayment of benefits)." [*Id.*]. If dismissal is not proper on these grounds, Defendants

4

urge the Court to dismiss the claims because Plaintiffs fail to allege facts that can support the remedies they seek under ERISA. [*Id.* at 6–9].

In response, Plaintiffs agree that Defendants have recently distributed their funds under the Plan and that therefore "Plaintiffs' request for specific performance is now moot." [Pls.' Resp. at 3]. Plaintiffs also state that Defendants have offered an accounting of their funds that is "satisfactory." [*Id.*]. Although Plaintiffs acknowledge that they have received the funds, they nevertheless maintain that "this Court should issue a permanent injunction to prohibit Defendants from continuing to alienate Plaintiffs [sic] retirement monies." [*Id.*]. Plaintiffs also contend that Defendants still owe them attorney's fees, prejudgment interest, and restitution totaling $175, which is a loss that they claim to have incurred because of "market fluctuation" while they waited for Defendants to distribute their funds. [*Id.*]. In sum, Plaintiffs maintain that "[a]t the time [they] filed their lawsuit, they were entitled to all of the relief sought" and have "forced the Defendants to attempt to comply with ERISA" by filing the lawsuit. [*Id.* at 6]. Because Plaintiffs believe that they remain entitled to "(a) restitution of lost monies, (b) prejudgment interest, (c) injunctive relief, and (d) attorney fees," they ask the Court not to dismiss their claims. [*Id.*].

### A. Section 1132(a)(1)(B)

Because Plaintiffs concede that they received the funds from Defendants and that their requests for specific performance and an accounting under § 1132(a)(1)(B) are moot, the Court will dismiss this claim to the extent that Plaintiffs seek either specific

5

performance or an accounting as relief.[5] The Court must now address whether it should leave the remainder of the claim intact to permit Plaintiffs to recover the other types of remedies that they seek under § 1132(a)(1)(B), including prejudgment interest for the delay in their procurement of benefits and attorney's fees. *See* 29 U.S.C. § 1132(g)(1); *Tiemeyer v. Cmty. Mut. Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir. 1993) ("Though ERISA does not address the propriety of awarding prejudgment interest, prejudgment interest may be awarded in the discretion of the district court." (citation omitted)); *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992) (noting that a court may award prejudgment interest and attorney's fees under ERISA); *see also Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 375–76 (6th Cir. 2015) (remanding the case to allow the district court to determine the plaintiff's right to and the amount of prejudgment interest under § 1132(a)(1)(B)). To resolve this issue, the Court must now consider Defendants' arguments for the dismissal of Plaintiffs' claim in its entirety.

*1. Mootness*

The civil-enforcement provisions under § 1132(a)(1)(B) state that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan." In contending that Plaintiffs' claim under § 1132(a)(1)(B) is now moot because they have received the funds, Defendants point to no authority to support their argument. Based on Defendants' failure to cite case law for their position, the Court has no basis for considering their argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–

---

[5] In light of this concession, Plaintiffs should have dismissed this claim voluntarily rather than leave it pending. *See* Fed. R. Civ. P. 11(b); Fed. R. Civ. P. 41(a).

6

96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *see also* E.D. Tenn. L.R. 7.1(b) (requiring briefs to contain the "legal grounds which justify the ruling sought from the Court").

In passing, however, the Court notes that both mandatory and persuasive authority present obstacles to Defendants' argument. *See Roy v. Kimble Chase Life Sci. & Research Prods., LLC*, No. 3:12-CV-537-TAV-HBG, 2014 WL 4219612, at *6 n.2 (E.D. Tenn. Aug. 25, 2014) ("Although defendants argue that the eventual receipt of long-term disability benefits moots plaintiff's ERISA claim, the Court finds that the receipt of long term disability would merely limit the amount of damages plaintiff may be awarded at trial rather than moot her claim altogether."); *Lieske v. Morlock*, 570 F. Supp. 1426, 1430 (N.D. Ill. 1983) (denying a plan administrator's motion to dismiss an ERISA claim as moot when the beneficiary "[did] not seek distribution of lump sum payouts but rather damages incurred by the plaintiffs as a result of defendants wrongfully denying the lump sum distributions"). Defendants also argue that Plaintiffs are not entitled to prejudgment interest because the benefits they received included earnings since January 2016, [Defs. Br. at 6], but whether the benefits did or did not include earnings is a question of fact, which the Court may not consider on a motion to dismiss, *see, e.g.*, *Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part); *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014). The Court therefore will not dismiss Plaintiffs' entire claim as moot.

7

### 2. Exhaustion of Administrative Remedies

In addressing Defendants' second argument as to the exhaustion of administrative remedies, the Court recognizes that "[i]t is well settled that '[b]eneficiaries seeking to recover improperly denied benefits must first exhaust the administrative remedies available to them, unless doing so would be futile or would furnish inadequate relief.'" *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Son, Inc. Emp. Health & Welfare Plan*, No. 2:08-cv-1140, 2010 WL 291749, at *6 (S.D. Ohio Jan. 15, 2010) (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 719 (6th Cir. 2005)). ERISA's requirement of administrative exhaustion, however, "is applied as a matter of judicial discretion." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998). When a participant claims a right to benefits under a plan, the exhaustion-of-remedies doctrine is typically relevant when the plan's administrator denies the participant's eligibility for those benefits—an act that allows for review of the denial and creation of a record. *See Weiner v. Klais & Co.*, 108 F.3d 86, 90, 91 (6th Cir. 1997); *see also Madera v. Marsh USA, Inc.*, 426 F.3d 56, 61–62 (1st Cir. 2005).

In this case, Plaintiffs allege that Defendants did not timely release their benefits under the Plan, [Compl. ¶¶ 13, 17], so the issue is not whether the Terry Law Firm abused its discretionary authority by denying Plaintiffs' eligibility for benefits under the Plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (articulating the appropriate standard of review when a participant relies on § 1132(a)(1)(B) to challenge a plan administrator's denial of benefits). Rather, the issue is contractual in nature—in particular, whether Defendants breached their contractual duty under the Plan to release

8

the funds in a timely manner. *See* § 1132(a)(1)(B) (empowering a participant "to enforce his rights *under the terms of the plan*" (emphasis added)); *see also Luebbe v. Stephens' Drugs, Inc.*, No. 3:10-CV-753-H, 2011 WL 2418637, at *2 (W.D. Ky. June 14, 2011) (reviewing allegations that a plan's administrator had not deposited benefits into a participant's 401(k) account and stating that "the question is not whether the plan or administrator exercised acceptable judgment given the facts, but rather whether [the plan] [was] obligated by statute or contract to deposit withheld funds . . . into [the] 401(K) account"); *see also Smith v. Health Res. of Ark., Inc.*, No. 1:13CV00094 BD, 2015 WL 12696115, at *10 (E.D. Ark. Dec. 8, 2015) (stating that a case in which a plan's administrator did not timely deposit funds into a participant's 401(k) account "is not a case where an employee disagrees with the decisions made by the plan administrator . . . or generally questions decision-making").[6] Because this case does not involve the typical scenario under which the exhaustion-of-remedies doctrine is pertinent—namely the denial of a participant's eligibility for benefits—the Court sees no reason to apply the doctrine. The Court therefore will not rely on it as a basis for dismissing Plaintiffs' claim under

---

[6] Some courts have held that an administrator's refusal to act in response to a claim for benefits is a "*de facto* denial" that entitles a participant to bring suit under § 1132(a)(1)(B) and excuses a participant's need to exhaust administrative remedies. *Nationwide Children's Hosp.*, 2010 WL 291749 at *6 (citing *Riggs v. A.J. Ballard Tire & Oil Co. Pension Plan & Tr.*, Nos. 91-2130, 91-2219, 1992 WL 345584, at *2 (4th Cir. Nov. 19, 1992)); *cf. Vaca v. Sipes*, 386 U.S. 171, 185 (1967) ("We think that another situation when the employee may seek judicial enforcement of his contractual rights arises . . . if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance.").

§ 1132(a)(1)(B). Plaintiffs may proceed with this claim, and they remain entitled to pursue recovery of prejudgment interest and attorney's fees.

### B. Section 1132(a)(3)

The civil-enforcement provisions under § 1132(a)(3) state:

> A civil action may be brought . . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

Section 1132(a)(3) is a "catchall provision," *Varity Corp. v. Howe*, 516 U.S. 489, 518 (1996), which means that it is "intended to serve 'as a safety net' by providing equitable relief for violations that [§ 1132] 'does not elsewhere adequately remedy,'" *Donati v. Ford Motor Co., Gen. Ret. Plan, Ret. Comm.*, 821 F.3d 667, 673 (6th Cir. 2016) (quoting *id.* at 512). "[I]rrespective of the degree of success obtained on a claim for recovery of benefits under [§ 1132(a)(1)(B)]," a party therefore may "pursue a . . . claim under [§ 1132(a)(3)]" when that claim is "based on an *injury* separate and distinct from the denial of benefits." *Rochow*, 780 F.3d at 372 (quotation omitted). Indeed, the purpose of the relationship between § 1132(a)(1)(B) and § 1132(a)(3) is to allow a court to fashion a remedy that will "make [a] claimant[] whole" again by providing him with complete relief for his injuries. *Id.* When a court decides whether a party may bring simultaneous claims under § 1132(a)(1)(B) and § 1132(a)(3), "it is essential [for it] to look to the 'adequacy of relief to redress the claimant's injury, not the nature of the defendant's wrongdoing." *Donati*, 821 F.3d at 673 (quotation omitted).

### 1. Failure to Plead a Breach of Fiduciary Duty

In contending that dismissal is appropriate because Plaintiffs fail to "allege any breach of fiduciary duty," [Defs.' Br. at 5], Defendants overlook the fact that § 1132(a)(3) permits suits for equitable relief not only for breaches of fiduciary duty but also "other injuries" based on violations of § 1132, like injuries based on a violation of § 1132(a)(1)(B). *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) (citing *Varity*, 516 U.S. at 512). Plaintiffs allege a clear and factually sufficient violation of § 1132(a)(1)(B)—so clear, in fact, that Defendants proceeded to distribute the benefits once Plaintiffs filed their Complaint. [*See* Defs.' Br. at 4]. To remedy the alleged violation of § 1132(a)(1)(B), Plaintiffs plead that they brought this action in part under § 1132(a)(3), [*see* Compl. ¶ 4], and they plead specific types of equitable relief to which they believe they are entitled under § 1132(a)(3) to make themselves whole again, [*see id.* at 6–7]. These allegations are sufficient to apprise Defendants of the claim against them and to enable them to respond in an informed way. The Court cannot accept Defendants' invitation to dismiss Plaintiffs' claim for failure to allege "any breach of fiduciary duty," [Defs.' Br. at 5], a result that would constrict the scope of § 1132(a)(3) and defeat its purpose as a catchall provision that relieves "other injuries" and not just breaches of fiduciary duty, *Wilkins*, 150 F.3d at 615 (citing *Varity*, 516 U.S. at 512).

### 2. Separate and Distinct Injury

In considering Defendants' argument that Plaintiffs' claim under § 1132(a)(3) is improper because it is not based on an injury separate and distinct from the denial of

benefits, the Court must consider whether restitution and injunctive relief—the remaining remedies that Plaintiffs seek under § 1132(a)(3)—can redress Plaintiffs' injuries in ways that § 1132(a)(1)(B) cannot. *See Donati*, 821 F.3d at 673; *see also Rochow*, 780 F.3d at 375 (acknowledging that "equitable relief is not ordinarily appropriate where Congress has provided adequate relief for a claimant's injury" elsewhere). Before the Court determines, however, whether Plaintiffs' claim under § 1132(a)(3) implicates a separate injury from the denial of benefits, the Court must consider whether Plaintiffs' requested remedies constitute "other appropriate equitable relief" under § 1132(a)(3). *See* § 1132(a)(3) (permitting "appropriate equitable relief"); *see also Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 944 (8th Cir. 1999) ("[S]ection 1132(a)(3) is not a limitless free-for-all. The plain language of the statute limits relief to 'appropriate equitable relief.'"). Defendants maintain that Plaintiffs' request for restitution fails to meet this criterion.

      i. Restitution

Although restitution is "a remedy traditionally viewed as 'equitable,'" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993), Defendants contend that Plaintiffs' request masquerades as equitable relief when it is really a request for monetary compensation, which they claim is unavailable under § 1132(a)(3), [Defs.' Br. at 7–8]. Plaintiffs describe their request for restitution as "an amount of money equal to the decrease in their 401 (k) profit-sharing accounts from January 1, 2016, to the date of distribution." [Compl. at 6]. The purpose of restitution is "to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction," *Alexander v. Bosch Automotive Sys., Inc.*,

12

232 F. App'x 491, 500 (6th Cir. 2007) (quotation omitted); in other words, it "focuses on the defendant's wrongfully obtained gain," *Kerr*, 184 F.3d at 944. In a typical case, a plaintiff has a right to restitution when he transfers funds or property to a defendant and the law requires the defendant to return those funds or property. *Alexander*, 232 F. App'x at 500.

The Court agrees with Defendants that Plaintiffs' request for restitution is more akin to a request for monetary compensation, which is "the classic form of *legal* relief," *Mertens*, 508 U.S. at 255, and does not fall under the panoply of equitable relief available under § 1132(a)(3), *id.* at 256–258. Plaintiffs do not allege that the $175 in recompense that they pursue is an ill-gotten gain or unjust enrichment that lined Defendants' own pockets. Rather, the gist of the allegations is that $175 is an amount that Plaintiffs *could* have earned had they received their benefits sooner and had the opportunity to invest them in the market. These allegations are insufficient to support a remedy of restitution. *See Alexander*, 232 F. App'x at 500 ("[T]he doctrine of equitable restitution is an awkward fit under these circumstances because [the] [p]laintiffs did not transfer identifiable funds or property to [the defendant]." (citations omitted)); *see also Helfrich v. PNC Bank, Ky., Inc.*, 267 F.3d 477, 481 (6th Cir. 2001) ("[The] request[] . . . [for] compensat[ion] . . . for the losses [the plaintiff] suffered because [the defendant] failed to transfer his assets to higher performing mutual funds . . . constitutes money damages, not restitution."); *see also Kerr*, 184 F.3d at 945 (holding that the plan administrator's failure to timely distribute the plaintiff's benefits into a 401(k) account for "reinvestment" did not permit the plaintiff to recover monetary relief for "lost opportunity costs"). The Court therefore will dismiss

Plaintiffs' claim under § 1132(a)(3) to the extent that Plaintiffs aim to recover $175 in reparation, which is not restitution even though Plaintiffs characterize it that way. *See Mertens*, 508 U.S. at 255 ("Although they often dance around the word, what petitioners in fact seek is nothing more than compensatory *damages*[.]" (citation omitted)).

ii. Injunctive Relief

The remaining prop for Plaintiffs' claim under § 1132(a)(3) is their request for an injunction. Like restitution, an injunction is a classic equitable remedy and is therefore a permissible remedy under § 1132(a)(3). *Id*. The injury that Plaintiffs claim warrants an injunction is Defendants' attempt to alienate their benefits in violation of § 1056. [Compl. ¶ 21; *see* Mot. to Pay Monies at 1–5]. Defendants make no effort to explain why or how this alleged injury under § 1056 is not separate and distinct from the denial of benefits under § 1132(a)(1)(B). Although Defendants cite *Wilkins* and *Rochow* to support their position, neither of these cases addresses injuries that arise out of § 1056's anti-alienation provision. Indeed, injunctive relief under § 1132(a)(3) appears to be the only type of remedy that will provide Plaintiffs with the complete relief they seek for their alleged injury under § 1056. *Cf. Hill*, 409 F.3d at 718 (determining that "[o]nly injunctive relief of the type available under § 1132(a)(3)" could provide a remedy to the plaintiff for the defendant's defective handling of plan-wide claims, which was distinct from the plaintiff's injury under § 1132(a)(1)(B)); *Gen. Motors Corp. v. Buha*, 623 F.2d 455, 458–59 (6th Cir. 1980) (concluding that § 1056(d)(1)'s anti-alienation provision "could be given its intended scope" only by the district court's enjoinment of a writ of garnishment issued by a state

14

court); *see* § 1132(a)(3) (permitting a plaintiff "to enjoin any act or practice which violates any provision of this subchapter," which includes § 1056).

While Plaintiffs concede that they have received their benefits, they maintain that their request for an injunction remains vital because they "have no assurances, based on the Defendants [sic] past conduct, that [Defendants] will not engage in some scheme or ruse to purloin these retirement funds." [Pls.' Br. at 6]. The Court gathers that Plaintiffs harbor concerns that the state court might attempt to restrain their benefits to satisfy a possible civil judgment against them, considering that Defendants' Motion to Pay Monies into Court—as far as this Court is aware—is still pending. Whatever form of injury that they may intend to enjoin, the Court will not bar them from pursuing their statutory right to injunctive relief at this stage.

Defendants base their argument for dismissal on what they perceive to be Plaintiffs' failure, under Federal Rule of Civil Procedure 8(a)(2), to state a plausible claim and satisfy the pleading requirements for an injunction. [Defs.' Br. at 8–9 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))]. The courts in this circuit, however, look to Federal Rule of Civil Procedure 8(a)(3) to determine whether a request for an injunction is sufficient at the pleading stage, not to Rule 8(a)(2). *See Lewis v. Ceralvo Holdings, LLC*, No. 4:11-CV-00055-JHM, 2012 WL 32607, at *6 (W.D. Ky. Jan. 6, 2012) ("[T]he [p]laintiffs' request for an injunction must be plead according to Fed. R. Civ. P. 8(a)(3), which requires only 'a demand for relief sought,' not the more stringent standard of Fed. R. Civ. P. 8(a)(2)."); *see also Prof'l Investigating & Consulting Agency, Inc. v. Suzuki*, No. 2:11-cv-01025, 2014 WL 4181675, at *4 (S.D. Ohio Aug. 21, 2014); *Velez v. Cuyahoga Metro. Hous. Auth.*,

15

No. 1:13CV1022, 2014 WL 847406, at *5 (N.D. Ohio Mar. 3, 2014). By demanding injunctive relief, Plaintiffs satisfy Rule 8(a)(3)'s straightforward standard, and the Court will refrain from dismissing their request or commenting on its merits here at the pleading stage. *Lewis*, 2012 WL 32607 at *6.

## IV. CONCLUSION

Plaintiffs plead a plausible cause of action under § 1132(a)(1)(B), in addition to a plausible cause of action for injunctive relief under § 1132(a)(3). Plaintiffs, however, do not plead facts under § 1132(a)(3) that support the equitable recovery of losses due to market fluctuation while Defendants allegedly withheld their funds. Defendants' Motion to Dismiss [doc. 8] is therefore **GRANTED in part and DENIED in part**. The Court orders as follows:

1. The Court **GRANTS** dismissal of Plaintiffs' claim under § 1132(a)(1)(B) to the extent that Plaintiffs seek specific performance and an accounting. The Court **DENIES** dismissal of this claim in all other respects, and Plaintiffs remain entitled to pursue prejudgment interest and attorney's fees.

2. The Court **GRANTS** dismissal of Plaintiffs' claim under § 1132(a)(3) to the extent that Plaintiffs seek $175 in monetary compensation. The Court **DENIES** dismissal of this claim in all other respects, and Plaintiffs remain entitled to pursue injunctive relief.

3. Defendants **SHALL** serve a responsive pleading within fourteen days from the date of this Order.

**IT IS SO ORDERED.**

ENTER:

s/ Thomas W. Phillips
United States District Judge

17

Case 2:16-cv-00091-TWP-MCLC   Document 13   Filed 11/07/16   Page 17 of 17   PageID #: 197